UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

TYRONE MONTGOMERY                                                    MOVANT/DEFENDANT

v.                                                    CRIMINAL ACTION NO. 3:07-CR-00036-CRS

UNITED STATES OF AMERICA                                           RESPONDENT/PLAINTIFF

**MEMORANDUM OPINION**

This matter is before the Court on Defendant Tyrone Montgomery's ("Petitioner") *pro se* motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255. (DN 76). For the reasons set forth below, the Court will deny the motion.

**BACKGROUND**

On September 1, 2011, Petitioner filed a *pro se* motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 (DN 76), which he thereafter supplemented with additional filings (DNS 97, 100, 101). As the basis for his motion, Petitioner alleges that his conviction resulted from violations of: 1) his Fifth Amendment right to due process; and 2) his Sixth Amendment right to effective assistance of counsel. While Petitioner's due process claim is based solely on his contention that he was denied his right to a speedy trial under the Speedy Trial Act, Petitioner's ineffective assistance of counsel claim is based on several alleged errors on the part of his appointed counsel, including: 1) counsel's failure to argue for reversal of Sixth Circuit precedent holding that plea negotiations constitute "other proceedings" under the Speedy Trial Act; 2) counsel's failure to persuade the court that plea negotiations do not constitute

1

excludable time under the Speedy Trial Act; 3) counsel's failure to appear in person at a telephonic conference concerning Petitioner's motion to suppress; 4) counsel's failure to object to the government's request for extension of time to file responses; and 5) counsel's failure to inform Petitioner of a plea offer tendered by the government whereby the government would not file an information to establish previous convictions under 21 U.S.C. § 851 in exchange for Petitioner's agreement to enter an open plea of guilty.

On March 28, 2012, the United States filed its response (DN 89), to which Petitioner subsequently replied (DN 95). In accordance with local practice, the case was referred to United States Magistrate Judge James D. Moyer for the preparation of a Report & Recommendation (the "Report"). In the Report, Judge Moyer recommends that Petitioner's motion should be granted on the ground that Petitioner's counsel provided ineffective assistance of counsel by failing to inform him of the plea offer tendered by the government. (DN 105). With respect to Petitioner's due process claim, the Report concludes that, because it was previously litigated on direct appeal as part of Petitioner's speedy trial claim, it cannot serve as a basis for relief under 28 U.S.C. § 2255. With respect to Petitioner's remaining claims of ineffective assistance of counsel, the Report concludes that the alleged errors on the part of Petitioner's counsel fell within counsel's discretion to make strategic choices for his client and therefore could not properly serve as the basis for a claim of ineffective assistance of counsel.

Both Petitioner and the United States have filed objections to the Report. Petitioner objects that the Report incorrectly concluded that his due process claim should be denied because it had been previously litigated on direct appeal. According to Petitioner, his due process claim is not merely an avenue for relitigation of his speedy trial claim, but is instead an attempt "to set out a different approach to a claim… that arose out of the same conduct." (Petitioner's

Objections, DN 106, at 2). For its part, the United States objects that the Report incorrectly concluded that Petitioner received ineffective assistance of counsel during plea negotiations because: 1) there was never any definite offer to enter into a binding plea agreement, meaning that counsel's failure to communicate the offer did not constitute deficient performance; and 2) Petitioner did not suffer prejudice as a result of his counsel's allegedly ineffective representation.

For the reasons set forth below, the Court concludes that: 1) Petitioner's due process claim was litigated on direct appeal and therefore cannot serve as the basis for relief under 28 U.S.C. § 2255; and 2) Petitioner did not receive ineffective assistance of counsel because Petitioner has failed to demonstrate that he suffered prejudice from his counsel's failure to inform him of the government's plea offer. Therefore, the court will deny Petitioner's 28 U.S.C. § 2255 motion.

**STANDARD**

To obtain habeas relief under 28 U.S.C. § 2255, the movant must demonstrate that his "sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack...." 28 U.S.C. § 2255(a). For petitions based on constitutional error, the movant "must establish an error of constitutional magnitude which had a substantial and injurious effect or influence on the proceedings." *Watson v. United States*, 165 F.3d 486, 488 (6th Cir. 1999) (citing *Brecht v. Abrahamson*, 507 U.S. 619, 637–38 (1993)). Importantly, however, "a § 2255 motion may not be used to relitigate an issue that was raised on appeal absent highly exceptional circumstances," such as an intervening change in the law. *Dupont v. United States*, 76 F.3d 108, 110 (6th Cir. 1996).

When a § 2255 motion has been referred to a magistrate judge for proposed findings and recommendations under 28 U.S.C. § 636(b)(1)(B), "the court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made" and "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C).

**DISCUSSION**

**i. Due Process**

Petitioner objects to the Report's conclusion that his due process claim was previously litigated on direct appeal and therefore cannot serve as the basis for habeas relief under 28 U.S.C. § 2255. After reviewing the record, the Court agrees with the Report that Petitioner's due process claim was previously litigated on direct appeal and and therefore cannot serve as the basis for habeas relief under 28 U.S.C. § 2255.

In his motion, Petitioner argues that his Fifth Amendment right to due process was violated to the extent that "the district court failed to tr[y] his criminal case within the time frame required under [the Speedy Trial Act]." (Amended Motion to Vacate, DN 97, at 13). Although Petitioner acknowledges that "the issue concerning the Speedy Trial Act was raised on direct appeal," he argues that, because the Sixth Circuit refused to consider his argument that certain delays should be considered non-excludable time,[1] he should not be precluded from asserting a due process claim based on this same argument. However, given that the Sixth Circuit considered Petitioner's remaining arguments in support of his speedy trial claim, *see United States v. Montgomery*, 395 F. App'x 177, 180–85 (6th Cir. 2010) (DN 72 at 4–13), the mere fact

---

[1] Specifically, the Sixth Circuit refused to consider Montgomery's argument that there was a period of non-excludable time between the filing of his motion to suppress and its ultimate disposition on October 22, 2007. *See United States v. Montgomery*, 395 F. App'x 177, 181 n.4 (6th Cir. 2010) (DN 72 at 4–13). Although the court formally refused to consider this argument, it nevertheless concluded that "[e]ven if we reviewed the claims on the merits… we would find them lacking." *Id.*

4

that they refused to consider this specific argument does not entitle Petitioner to relitigate the speedy trial issue.

Petitioner next attempts to justify relitigation of his speedy trial claim by arguing that there has been an intervening change of law. According to Petitioner, the United States Supreme Court's decision in *Bloate v. United States*, 559 U.S. 196 (2010), "reversed the Eight[h] Circuit's holding that time granted to a party to prepare pretrial motions is automatically excludable" and therefore supports his argument that continuances granted the government to prepare responses to pretrial motions should be counted as non-excludable time. However, *Bloate* dealt only with an extension of time to *submit* pretrial motions in general, rather than an extension granted to a party allowing them additional time to *prepare* a response to a pretrial motion. Indeed, *Bloate* specifically emphasized that the period of delay with which it dealt did not include the period "from the filing of the motion through the conclusion of the hearing on, or other prompt disposition from such motion." *Bloate*, 559 U.S. at 206 ("Subparagraph (D) does not subject all pretrial motion-related delay to automatic exclusion. Instead, it renders automatically excludable only the delay that occurs 'from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of' the motion.'"). Because the periods of delay which Petitioner argues constitute non-excludable time under the Speedy Trial Act each involved extensions granted the government to prepare responses to motions, and not an extension of time for submitting pretrial motions in general, *Bloate* is inapposite and therefore cannot serve as the basis for Petitioner's argument that an intervening change of law justifies his attempt to relitigate his speedy trial claim.

Petitioner's next argument in support of his claim that there has been an intervening change of law lies in his assertion that the United States Supreme Court's decision in *U.S. v.*

5

*Tinkleberg*, 131 S.Ct. 2007 (2011), reversed the Sixth Circuit's decision in *U.S. v. Tinkleberg*, 579 F.3d 589 (6th Cir. 2009), on which the Sixth Circuit partially relied in rejecting his speedy trial claim, *see United States v. Montgomery*, 395 F. App'x 177, 181 (6th Cir. 2010) (DN 72 at 6–7 n.4). Although Petitioner is correct that the Supreme Court's decision in *Tinkleberg* reversed that of the Sixth Circuit, his assertion that this resulted in a change of law favoring his speedy trial claim is mistaken. Whereas the Sixth Circuit in *Tinkleberg* held that periods of delay attributable to pretrial motions are excludable only if they "*actually* cause a delay… of trial," *see United States v. Tinkleberg*, 579 F.3d 589, 598 (6th Cir. 2009) (emphasis added) (holding that "a pretrial motion must actually cause a delay, or the expectation of a delay, of trial in order to create excludable time."), the Supreme Court went even further by holding that such periods of delay are *automatically* excludable without regard to whether they resulted in an actual delay of trial, *see U.S. v. Tinkleberg*, 131 S.Ct. 2007, 2011 (2011). Thus, although Petitioner is correct that there has been an intervening change of law, the change has only weakened his position and therefore cannot serve as a justification for giving him the opportunity to relitigate his speedy trial claim.

For the foregoing reasons, the Court agrees with and hereby adopts the Report's recommendation that Petitioner's due process claim must be denied as having been previously litigated on direct appeal.

## ii. Ineffective Assistance of Counsel

The United States objects to the Report's conclusion that Petitioner's trial counsel rendered constitutionally ineffective assistance by failing to inform him of the plea offer tendered by the government. As discussed above, the government allegedly offered to refrain from filing an information to establish Petitioner's previous convictions under 21 U.S.C. § 851 in

6

exchange for Petitioner's agreement to enter an open plea. According to the United States, the failure of Petitioner's counsel to inform him of this offer did not amount to ineffective assistance of counsel because 1) the offer was not a formal or "definite" offer such that Petitioner's counsel was under a duty to inform him of it; and 2) even if Petitioner's trial counsel was under a duty to inform him of this offer, Petitioner did not suffer any prejudice as a result of his failure to do so.

**i. Formality of the Government's Offer**

The government's first argument is that the alleged offer was never sufficiently formal such that Petitioner's counsel was ineffective for having failed to inform him of it. In *Missouri v. Frye*, 132 S.Ct. 1399 (2012), the United States Supreme Court held that "defense counsel has the duty to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused." *Id.* at 1408. Although there has been little exposition regarding the precise definition of the term "formal offer," the Court clearly intended to distinguish "offers" made during the course of preliminary negotiations from those made once negotiations have concluded. In other words, while there is no touchstone for assessing the formality of an offer, there must at the very least be some basis for concluding that the alleged offer could have been accepted or rejected without further discussion or negotiation.

According to the government, the testimony of Petitioner's counsel at the March 19, 2008, Motion to Dismiss Hearing (DN 53) clearly establishes that a formal offer was never made. At the hearing, Petitioner's counsel testified that "my recollection is that all [plea-related] conversations were made in passing" and that "none of the conversations would have resulted in any deal which I believe was final and binding on either side." (Hearing Transcript, DN 53, at 9). In the government's view, this testimony establishes that the alleged offer was more akin to

7

preliminary negotiations, rather than a formal offer that Petitioner could have immediately accepted.

Petitioner responds that, despite his attorney's apparent uncertainty regarding the definiteness of the government's offer, the testimony of Assistant United States Attorney Daniel P. Kinnecut ("Kinnecut") at the same hearing demonstrates that the offer was in fact formal and definite. In particular, Petitioner cites Kinnecut's testimony that, during plea negotiations, he said to Petitioner's counsel that "the best *offer* that I can make you, having rescinded the conditional plea, is to plea open and we won't file the 851s." (Petitioner's Objections to United States' Objections, DN 112, at 5) (emphasis in original). According to Petitioner, Kinnecut's use of the word "offer" clearly evinces the formality and definiteness of the alleged offer.

The question thus becomes whether Petitioner may satisfy his burden of establishing a constitutional violation based solely on the content of Kinnecut's statement, particularly his use of the word "offer." After reviewing the record, the Court concludes that this question must be answered in the negative. Far from qualifying as a formal offer, Kinnecut's statement amounts to nothing more than what contract law would refer to as an "invitation to enter into negotiations." This is true despite the fact that Kinnecut used the word "offer" because, contrary to Petitioner's suggestion, there is nothing talismanic about the word "offer" that transforms what otherwise consists of preliminary negotiations into a formal offer. Indeed, if semantics alone were to decide the formality of Kinnecut's offer, it would be equally plausible that Kinnecut's use of the verb "can" should be read as qualifying the remainder of his statement such that he should only be understood as referring to an offer that he *could possibly make*, as opposed to one he was currently making. In any event, however, because Petitioner bears the burden of establishing a

constitutional violation, his failure to resolve these uncertainties and ambiguities is itself sufficient to justify the conclusion that a formal offer was never made.

For these reasons, the Court concludes that Kinnecut's statement did not rise to the level of a formal offer and that Petitioner's counsel did not render constitutionally deficient performance for having failed to bring it to his attention.

**ii. Prejudice**

The government's next argument is that, even if the offer was sufficiently formal such that Petitioner's counsel was required to inform him of it, Petitioner has failed to establish that he suffered prejudice as a result and therefore cannot succeed in his claim of ineffective assistance of counsel. Specifically, the government argues that, regardless of whether it had filed an information under 21 U.S.C. § 851, Petitioner would have still been subject to sentencing as a career offender and therefore would have received the same 24-year sentence because "[t]he United States does not have the authority to prevent the court from finding that a defendant is a career offender." (United States' Objections, DN 109, at 15 n.3).

Albeit for different reasons, the Court agrees with the United States that Petitioner did not suffer any prejudice as a result of his counsel's failure to inform him of the government's purported plea offer. 21 U.S.C. § 851(a)(1) requires the prosecutor to file an information setting forth a defendant's prior convictions before such defendant may "be sentenced to increased punishment by reason of one or more prior convictions." Thus, "[t]he section 851(a)(1) enhancement notice requirement applies to situations in which a convicted defendant's statutory minimum or maximum penalty is enhanced under 21 U.S.C. §§ 841… and *not to situations in which the defendant is assigned a guideline base offense level and receives an increased sentence…. which remains within the statutorily prescribed minimum-maximum range.*" *United*

9

*States v. Sanchez*, 917 F.2d 607, 616 (1st Cir. 1990) (emphasis added) (internal quotation marks and alterations omitted); *see also United States v. Freeman*, 1991 WL 203088, at *5 (6th Cir. Oct. 4, 1991) (citing *Sanchez*, 917 F.2d at 616). Therefore, the critical question is whether the 24-year sentence ultimately imposed on Petitioner was within the statutorily prescribed minimum-maximum range *that would have been applicable* if the government had not filed an information under 21 U.S.C. § 851 and, more importantly, whether Petitioner's sentence would have actually been the same.

Although the government's filing of the information under 21 U.S.C. § 851 did in fact enhance the statutory minimum and maximum sentencing range, there is ample reason to find that Petitioner's sentence would have been the same even if the information had not been filed. At the time of Petitioner's sentencing, 21 U.S.C. § 841(b) imposed the following statutory minimum and maximum sentencing range for persons convicted of Petitioner's offenses and with respect to whom an information had been filed pursuant to 21 U.S.C. § 851:

Count 1: Possession with Intent to Distribute Cocaine Base—Over 50 Grams: (20–Life)

Count 2: Possession with Intent to Distribute Cocaine Base—Over 50 Grams: (20–Life)

Count 3: Possession with Intent to Distribute Cocaine Base—Over 5 Grams: (10–Life)

Had an information never been filed, Petitioner would have instead been subject to the following statutory minimum and maximum sentencing range:

Count 1: Possession with Intent to Distribute Cocaine Base—Over 50 Grams: (10–20)

Count 2: Possession with Intent to Distribute Cocaine Base—Over 50 Grams: (10–20)

Count 3: Possession with Intent to Distribute Cocaine Base—Over 5 Grams: (5–10)

Thus, as an initial matter, the Court notes that Petitioner's ultimate sentence—a 24-year term of imprisonment—was within the statutory minimum and maximum range that would have been

applicable even if the information had never been filed. For instance, Petitioner could have been sentenced to 15 years on Counts 1 and 2 to be served concurrently, and an additional 9 years on Count 3 to be served consecutively with the other sentences for a total of 24 years imprisonment. In this limited sense, therefore, Petitioner did not suffer prejudice as a result of his attorney's failure to inform him of the government's plea offer. However, even though the same sentence was was *permissible*, Petitioner could have potentially suffered prejudice in the event that the Court *might have imposed a different sentence* if the information had never been filed, thereby altering the applicable statutory sentencing range.

However, upon review of the sentencing transcript, this argument is likewise unavailing. At the sentencing hearing, the Court began by reviewing the Sentencing Guidelines ("Guidelines") and calculating the applicable sentencing range. *See* (Sentencing Transcript, DN 70, at 2–26). On the basis of the Court's conclusion that Petitioner was subject to sentencing as a career offender, the sentencing range was determined to be 360 months to life imprisonment. *See* (Sentencing Transcript at 25). Having determined the appropriate sentencing range under the Guidelines, the Court proceeded to carefully evaluate the 3553(a) sentencing factors, including Petitioner's criminal history, the seriousness of the offense, the interests of the public in promoting respect for the law and in ensuring crimes are justly punished, and the necessity of protecting the public from future crimes. *See* (Sentencing Transcript at 35–37). Based on the Court's detailed evaluation of these factors, the Court ultimately decided that, although a "significant sentence" was warranted, *see* (Sentencing Transcript at 38:06), Petitioner's motion for a downward departure should nevertheless be granted. According to the Court,

> The government has intimated that the 360-month sentence may be longer than is necessary. There is a 240-month mandatory minimum here, which the defendant urges, but I think something that is greater than that is necessary because of the fact here that we have simply continually been dealing in the court system with

11

> Mr. Montgomery and his predilection for drug dealing. And the goals and factors in 3553(a) counsel a sentence that is somewhere in there. I think that the motion for downward departure should be granted. The government does not appear to have much of an objection to it. And so I will depart downward to a level 33 at a criminal history category of VII. And I'm going to find that the defendant does qualify as a career offender and will sentence accordingly.

(Sentencing Transcript at 38). After detailing its reasoning, the Court declared that

> The judgment of the court is that the defendant is committed to the custody of the Bureau of Prisons for a term of 288 months as to each of Counts 1, 2 and 3 in the indictment. Those will be served concurrently, for a total term of 288 months.

(Sentencing Transcript at 39).

Although the Court made passing reference to the statutory minimum sentence, nothing in the transcript suggests that the Court in any manner relied on the applicable statutory minimum and maximum sentencing range in calculating Petitioner's sentence. To the contrary, the Court stated that "*something that is greater than [the statutory minimum] is necessary* because of the fact here that we have simply continually been dealing in the court system with Mr. Montgomery and his predilection for drug dealing." (Sentencing Transcript at 38) (emphasis added). Based on these excerpts, it is overwhelmingly clear that Petitioner's sentence was based solely on the Guidelines and other applicable 3553(a) sentencing factors, and thus was in no way dependent on the statutory sentencing range.

Because the 24-year term of imprisonment was within the statutory sentencing range *that would have been applicable* if the government had not filed the information, and because the Court relied exclusively on the Guidelines and other appropriate 3553(a) sentencing factors in arriving at its decision, there is no basis for Petitioner's assertion that he suffered prejudice as a result of his attorney's failure to inform him of the government's plea offer. Therefore, even if the plea offer had been sufficiently definite such that Petitioner's counsel was ineffective for

12

failing to inform him of it, Petitioner would nevertheless be unable to establish a violation under § 2255 because he cannot establish that he suffered prejudice therefrom.

## CONCLUSION

Having made a *de novo* determination regarding all portions of the Report to which objection has been made, the Court hereby:

i. adopts the Report's recommendation that Petitioner's due process claim should be denied; and

ii. rejects the Report's recommendation that relief be granted on Petitioner's ineffective assistance of counsel claim.

A separate order will be entered in accordance with this opinion.

**Charles R. Simpson III, Senior Judge**
**United States District Court**

November 26, 2013

cc: Counsel of Record
    Petitioner, pro se