UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

UNITED STATES OF AMERICA     PLAINTIFF

vs.     CRIMINAL ACTION NO. 3:07-CR-36-CRS

TYRONE MONTGOMERY     DEFENDANT

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court for consideration of a motion of the defendant, Tyrone Montgomery ("Montgomery"), *pro se*, for compassionate release. DN 160. The United States responded, objecting to the motion. DN 165. Montgomery filed a reply. DN 166. The matter is ripe for review.

The World Health Organization declared the novel coronavirus known as COVID-19 a pandemic on March 11, 2020.[1] The President of the United States declared a national emergency on March 13, 2020 and the Governor of the Commonwealth of Kentucky declared a state of emergency even earlier, after the first confirmed case of COVID-19 on March 6, 2020.[2] As of the date of this writing, there are 31,798,308 confirmed cases worldwide and 973,653 deaths; in the United States, there are 6,828,785 confirmed cases and 199,600 deaths.[3] Further elaboration concerning the health risks associated with COVID-19, especially for those individuals confined to nursing homes or incarcerated in our jails and prisons, is unnecessary. Suffice it to say that the

---

[1] *See* Tedros Adhanom Ghebreyesus, Director-General, World Health Organization, Opening Remarks at the Media Briefing on COVID-19 (March 11, 2020) (transcript available at https://www.who.int/dg/speeches/detail/who-director-general-s-openingremarks-at-the-media-briefing-on-covid-19--11-march-2020)
[2] *See* President Donald J. Trump's Proclamation on Declaring a National Emergency Concerning the Novel Coronavirus Disease (COVID-19) Outbreak (March 13, 2020), *available at* https://www.whitehouse.gov/presidential-actions/proclamation-declaring-national-emergency-concerning-novel-coronavirus-disease-covid-19-outbreak/; Governor Andy Beshear confirms first case of COVID-19 in the Commonwealth and declares a state of emergency (March 6, 2020), *available at* https://chfs.ky.gov/pages/search.aspx?affiliateId=CHFS&terms=declaration of state of emergency.
[3] *See* Coronavirus Disease (COVID-19) Situation Dashboard, World Health Organization, https://who.sprinklr.com/ (last visited September 24, 2020).

Court addresses motions for compassionate release, and Montgomery's motion in particular here, with the gravity of the situation in mind.

On March 26, 2008, a jury found Montgomery guilty of three counts of possession with intent to distribute a controlled substance in violation of 21 U.S.C. § 841(a)(1). DN 51. On July 10, 2008, this Court sentenced Montgomery to 288 months imprisonment and 10 years of supervised release. DN 58 Montgomery received an executive grant of clemency that reduced his sentence to 209 months imprisonment on August 3, 2016. DN 133. He is currently incarcerated at FCI Milan in Milan, Michigan. DN 160 at 8.

18 U.S.C. § 3582(c)(1)(A) permits a court to modify a term of imprisonment and grant what is known as "compassionate release" for extraordinary and compelling reasons. Prior to December 2018, motions for compassionate release could only be made by the Director of Prisons. However, the First Step Act, PL 115-391, 132 Stat 5194 (Dec. 21, 2018), amended 18 U.S.C. § 3582(c)(1)(A) to allow defendants to bring such motions on their own behalf "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf, or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility[.]"

Montgomery has provided a letter from Warden Jonathan Hemingway, dated June 19, 2020, responding to his request for compassionate release or reduction in sentence. DN 160-2 at 2. Warden Hemingway denied Montgomery's request on the ground that Montgomery's "debilitated medical condition, with or without the spread of the COVID-19 virus did not meet the criteria" for compassionate release or a reduction in sentence. *Id*. The Warden also noted:

> [t]he Bureau of Prisons (BOP) is carefully monitoring the spread of the COVID-19 virus and taking extraordinary measures to contain it. As with any type of emergency situation, we carefully assess how to best ensure the safety of staff, inmates and the public.

*Id.* Accordingly, Montgomery has satisfied the exhaustion requirement of the First Step Act. *United States v. Alam*, No. 20-1298, 2020 WL 2845694, at *2 (June 2, 2020)("For a prisoner to take his [compassionate release] claim to court, "he must 'fully exhaust[ ] all administrative rights to appeal' with the prison or wait 30 days after his first request to the prison." ")

Under § 3582(c)(1)(A), a court may reduce a defendant's sentence if it finds that "extraordinary and compelling circumstances warrant such a reduction," and that "such a reduction is consistent with the applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A)(i). The court must also consider the "[sentencing] factors set forth in section 3553(a) to the extent they are applicable." § 3582(c)(1)(A).

Congress tasked the Sentencing Commission that, "in promulgating general policy statements regarding the sentencing modification provisions in section 3582(c)(1)(A) of Title 18, [it] shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples." 28 U.S.C. § 994(t). In the Commentary to U.S.S.G. § 1B1.3,[4] the Commission described four circumstances which constitute extraordinary and compelling reasons for sentence reduction:

> **(A) Medical Condition of the Defendant.--**
>
> **(i)** The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.
>
> **(ii)** The defendant is--

---

[4] "While that particular policy statement has not yet been updated to reflect that defendants (and not just the BOP) may move for compassionate release, courts have universally turned to U.S.S.G. § 1B1.13 to provide guidance on the "extraordinary and compelling reasons" that may warrant a sentence reduction. *E.g., United States v. Casey*, 2019 WL 1987311, at *1 (W.D. Va. 2019); *United States v. Gutierrez*, 2019 WL 1472320, at *2 (D.N.M. 2019); *United States v. Overcash*, 2019 WL 1472104, at *2-3 (W.D.N.C. 2019). There is no reason to believe, moreover, that the identity of the movant (either the defendant or the BOP) should have any impact on the factors the Court should consider." *United States v. McGraw*, No. 202CR00018LJMCMM, 2019 WL 2059488, at *2 (S.D. Ind. May 9, 2019).

**(I)** suffering from a serious physical or medical condition,

**(II)** suffering from a serious functional or cognitive impairment, or

**(III)** experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

**(B) Age of the Defendant.--**The defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.

**(C) Family Circumstances.--**

**(i)** The death or incapacitation of the caregiver of the defendant's minor child or minor children.

**(ii)** The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.

**(D) Other Reasons.--**As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

The BOP promulgated Program Statement No. 5050.50 in order to implement the statutory scheme.

Montgomery argues "his health issues [] makes (sic) [him] particularly vulnerable to [COVID-19]" and "due to the national health emergency " the Court should grant his request for compassionate release. DN 160 at 9–10. It is undisputed that Montgomery has several medical conditions including hypertension, diverticulosis, colorectal surgery, and digestive issues. DN 160 at 8–9; *see* DN 160-1; DN 165 at 4. Montgomery does not allege that any of his health conditions are terminal, thereby making him ineligible for compassionate release under U.S.S.G. § 1B1.3(A).

"A court could find that [a] defendant's medical condition, heightened by risks posed by COVID-19, 'substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility' and is one 'from which he or she is not expected to recover.'"

*United States v. Bolze*, No. 3:09-CR-93-TAV-CCS-1, 2020 WL 2521273, at *7 (E.D. Tenn., May 13, 2020) (citing 1B1.13 n.1(A)(ii)). Montgomery's medical conditions fail to reach this threshold. Montgomery does not assert that he has received inadequate care for any of his conditions. Rather, he asserts that he has certain medical conditions and, considering the COVID-19 pandemic, he should be released. There is no evidence in the record that suggests that Montgomery cannot provide self-care or that he is not expected to recover from his conditions. And, further, the medical records Montgomery provided demonstrate consistent and effective treatment for all his conditions. *See* DN 160-1. Accordingly, the record before the Court does not suggest that Montgomery's medical conditions, even if possibly heightened by the risks posed by COVID-19, substantially diminish his ability to provide self-care at FCI Milan.

Additionally, Montgomery's request is based on the proposition that an individual with his medical conditions will be safer from COVID-19 if released compared to staying in FCI Milan. This proposition is without merit. As of the writing of this opinion, FCI Milan has 1,310 total inmates, none of which are currently infected with COVID-19, and 87 of which have recovered from the virus.[5] In comparison, Kentucky, where Montgomery plans to reside if released, has averaged 695 COVID-19 cases per day over the last week and currently has a 4.59% positivity rate.[6] The absence of any positive cases at FCI Milan suggests that the BOP has been diligent in its efforts to contain, prevent, and, in fact, eliminate, the spread of the virus within the facility. Accordingly, Montgomery has failed to demonstrate that he is at a higher risk of contracting COVID-19 in FCI Milan compared to being released.

---

[5] *See* https://www.bop.gov/coronavirus/index.jsp (last visited September 24, 2020).
[6] *See* https://www.nytimes.com/interactive/2020/us/kentucky-coronavirus-cases.html; https://govstatus.egov.com/kycovid19 .(last visited September 24, 2020).

Montgomery has failed to articulate an extraordinary and compelling reason for compassionate release. For the reasons stated above, his motion will be denied.

Additionally, even when a defendant is statutorily eligible for a sentence reduction based on extraordinary and compelling reasons, compassionate release is only appropriate after consideration of the factors set forth in 18 U.S.C. § 3553(a) and where the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 4142(g). The United States urges that the nature and circumstances of Montgomery's crimes weigh against release. The Court agrees.

The jury found Montgomery guilty of three counts of possession with intent to distribute fifty grams or more of crack cocaine. DN 58 at 2. And, Montgomery is a repeat offender. He has pled guilty to multiple counts of carrying a concealed deadly weapon, possession of marijuana, and trafficking in a controlled substance. DN 56 at 8–10. Indeed, Montgomery committed the offenses he is currently incarcerated for while on probation for his prior convictions. *Id*. at 10. Therefore, there appears a significant possibility that Montgomery may disregard conditions of release and reoffend.

Further, Montgomery states that he intends to "serve the balance of his sentence at the home of his cousin, Michelle Maddox" in Radcliff, Kentucky. DN 160 at 10. With the dangers posed by the pandemic impacting the ability of the probation officers to conduct home visits and supervision, it would be exceptionally difficult to adequately and safely monitor the defendant's compliance. The ability to monitor the defendant is clearly a proper consideration when assessing the danger posed by release of an individual, especially where the defendant had prior drug offenses. Considering these circumstances, compassionate release would be improper.

Motion having been made and for the reasons set forth herein and the court being otherwise sufficiently advised, **IT IS HEREBY ORDERED AND ADJUDGED** that the motion of the defendant, Tyrone Montgomery, *pro se*, for compassionate release (DN 160) is **DENIED. IT IS SO ORDERED.**

September 25, 2020

**Charles R. Simpson III, Senior Judge**
**United States District Court**